IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:19-CT-3116-M

PATRICK RYAN MCGRAW, )
)
    Plaintiff, )
)
v. ) ORDER
)
N.C. DEPARTMENT OF )
CORRECTIONS, )
)
    Defendant. )

This cause is before the court on defendant's motion to dismiss [D.E. 13]. For the reasons discussed below, the court GRANTS the motion.

### Statement of the Case:

On April 25, 2019, plaintiff, then a state inmate, filed *pro se* a civil-rights action pursuant to 42 U.S.C. § 1983. Compl. [D.E. 1]. The initial complaint lists the "North Carolina Department of Corrections" as the sole named defendant–writing "to be determined by attorney" in the "job title" section for this defendant–and lists "to be determined" as to other defendants. Id. at 3–4. Plaintiff alleges that, shortly after doing "weed eating work" at Tabor City Correctional Institution ("C.I."), plaintiff became ill "with a high fever, profuse sweating, and . . . a harsh cough which caused painful burning in his lungs." Id. at 5. Plaintiff entered a sick call request, "it took medical some time to respond" and, when he explained his symptoms to a nurse, plaintiff "was ignored because [he] had no fever at that visit." Id. After filing additional sick call and emergency sick call requests, plaintiff received cough drops and Tylenol. Id. Plaintiff alleges he was "too weak and too sick," and that, when a guard asked him if he was alright, he could not respond. Id. at 6. Plaintiff continued to experience fevers, sweating, coughing, and burning in his chest "for weeks" and lost approximately 40 pounds.

Id. Plaintiff alleges he was sent to various community hospitals and, eventually, to the state medical department in Raleigh, but that he received no diagnosis for his condition. Id. After a nurse in Raleigh discovered plaintiff experiencing a seizure, he was sent to Rex Hospital. Id. Plaintiff then was transferred to UNC Hospital where "it was discovered [his] right upper lung had been 'eaten' by some organism and this organism also invaded [his] brain and was eating it also, causing more seizures due to increasing inter-cranial pressure." Id. at 6–7. Plaintiff received emergency surgery at UNC Hospital during which a surgeon nicked plaintiff's right carotid artery, requiring plaintiff to receive a blood transfusion. Id. at 7. Because the organism was "eating [his] brain," plaintiff underwent a craniotomy and suffered from temporary loss of speech. Id. Plaintiff further alleges that, during an infectious disease referral at Wake Forrest Baptist Hospital, plaintiff "was informed that if [he] had received prompt and effective medical all of this could have been avoided [sic]." Id. Plaintiff asserts that he has "3 medium-sized boxes of 'discovery' organized and prepared for attorney [sic]," and that "this case has been evaluated by two attorneys already and feel the case is valid." Id. at 8. As to exhaustion, plaintiff asserts that he had not completed the grievance process because: "I was mostly ignored until I was about dead. Grievance process will be completed after this litigation is complete [sic]." Id. at 9. For relief, plaintiff requests: "I want the court to do what is right for this violation of my right to fast medical care instead of waiting until I was almost dead and now impaired permanently." Id.

On May 1, 2019, the court issued an order of deficiency because plaintiff failed to sign the complaint. Order [D.E. 3]. On May 15, 2019, plaintiff filed a signed complaint. [D.E. 4].

On September 13, 2019, the court conducted its frivolity review of the initial complaint. See Order [D.E. 5]. The court: found that the "North Carolina Department of Corrections" is properly identified as the North Carolina Department of Public Safety ("DPS"); determined that DPS was not an "individual" amenable to suit under section 1983; found that plaintiff had failed to satisfy the requirements of notice pleading by listing other defendants "to be determined"; and directed plaintiff

2

to file an amended complaint. Id. at 4 (citing, *inter alia*, Fed. R. Civ. P. 8; Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); West v. Atkins, 487 U.S. 42, 48 (1988)).

On October 24, 2019, plaintiff filed *pro se* an amended complaint naming the following Tabor City C.I. defendants: Nurse Theresa C. Gore ("Gore"); Nurse Nancy J. Wargas ("Wargas"); and Physician's Assistant Kimberly C. Wynn ("Wynn"). Am. Compl. [D.E. 7] at 2–3. Plaintiff also named John/Jane Doe defendants allegedly responsible for "processing sick requests" with the North Carolina Department of Public Safety ("DPS"). Id. at 3. Plaintiff asserts the events giving rise to his claims occurred in "April-June 2016, and after." Id. at 5. Plaintiff alleges that, although he complained repeatedly of respiratory illness at Tabor City C.I. during 2016, he was denied access to a physician until April 28, 2016. Id. Plaintiff again contends he became ill shortly after doing "weed eating work detail" near a swamp. Id. at 6. Plaintiff's symptoms included a high fever, profuse sweating and "a harsh cough which caused painful burning in [his] lungs." Id. Plaintiff entered a sick call request but, by the time he was seen by a nurse, his fever had broken. Id. Plaintiff asserts that he explained his "signs and symptoms" but "was ignored because [he] had no fever at that visit." Id. Plaintiff subsequently filed two sick call requests and two emergency sick call requests. Id. Plaintiff received cough drops and Tylenol. Id. Plaintiff alleges that, "after this [he] was too ill to do anything else" and that, when a guard asked him if he was alright, he could not respond. Id. Plaintiff continued to experience fevers, sweating, coughing, and burning in his chest "for weeks" and lost approximately 40 pounds. Id. Plaintiff alleges he was sent to various community hospitals that failed to diagnose his condition or treat him effectively. Id. Plaintiff's condition worsened and he was sent to the state medical department in Raleigh, but he still received no diagnosis for his condition. Id. After a nurse discovered plaintiff experiencing a seizure, he was sent to Rex Hospital. Id. Plaintiff then was transferred to UNC Hospital where "it was finally discovered [that his] right upper lung had been

3

'eaten' by some organism and this organism had also invaded [his] brain and was eating it also, causing more seizures and due to increasing inter-cranial pressure [sic] . . . ." Id. Plaintiff received IV fluids and antibiotics. Id. Plaintiff's mother was informed he had a 5-15% chance of survival. Id. Plaintiff underwent lung surgery during which a surgeon nicked plaintiff's right carotid artery, requiring a blood transfusion. Id. Because the organism that damaged his lungs was "eating [his] brain," plaintiff underwent a craniotomy and suffered from temporary loss of speech. Id. Plaintiff alleges that, during an infectious disease referral at Wake Forrest Baptist Hospital, plaintiff "was informed that if [he] had received prompt and effective medical care all of this could have been avoided [sic]." Id. Plaintiff alleges the organism was inhaled while he was doing Tabor City C.I. "weed-eating work." Id. These aspects of the amended complaint essentially reiterate the claims plaintiff raised in his initial complaint. Compare Am. Compl. [D.E. 7] at 6–7, with Compl. [D.E. 1] at 5–8.

Plaintiff's amended complaint newly contends that the John/Jane Doe defendants "who are responsible for deciding which sick call requests will be honored" failed to "put [plaintiff] through to medical when [he] asked and when something could have been done." Am. Compl. [D.E. 7] at 6. Plaintiff alleges that, when he "finally got through" to Tabor City C.I. defendant nurses Wargas and Gore, they did not allow plaintiff to see a doctor. Id. Plaintiff contends, "[t]hey finally allowed [plaintiff] to see [defendant] Physician's Assistant Wynn, who at last consulted a doctor, apparently for the first time, and arranged for [plaintiff] to go to a hospital, which got the treatment started." Id. at 6–7. Plaintiff further notes that, on May 11, 2016, he was seen by Dr. Becky White ("Dr. White") at Central Prison. Id. at 7. Dr. White recorded that plaintiff had chronic pneumonia with productive cough for about two months prior to hospital presentation and consulted with a physician identified as Dr. Sen as to the origin of plaintiff's right lung abscess. Id. at 7, 14. Plaintiff asserts, "I have suffered serious loss of health, removal of part of lungs, craniotomy, pain and suffering, loss of quality of life,

4

need for future care, increased risk of premature death, and other damages [sic]." Id. at 7. Plaintiff seeks monetary relief. Id.

On November 5, 2019, the court: conducted its initial review of the amended complaint; allowed the claims to proceed against Gore and Wargas; dismissed without prejudice the claims against Wynn and the John/Jane Doe defendants; directed the clerk to manage the action pursuant to Standing Order 14-SO-02; and, if service failed under the standing order, directed the United States Marshals Service ("USMS") to make service under 28 U.S.C. § 1915(d). Order [D.E. 8].

On January 3, 2020, the North Carolina Attorney General 1) notified the court that DPS had been unable to procure waivers of service of process for defendants Gore and Wargas, and 2) provided under seal these defendants' last known addresses. See [D.E. 10].

On January 8, 2020, this case was reassigned to the undersigned judge via a text order.

On January 9, 2020, the court issued summons for the USMS to serve defendants Gore and Wargas at their addresses under seal. See [D.E. 11].

On February 14, 2020, the summonses were returned executed as to Wargas. [D.E. 12].

On February 24, 2020, Wargas filed a motion to dismiss the action for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Mot. [D.E. 13], with a memorandum in support, Mem. [D.E. 14].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the pending motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 15].

On March 16, 2020, plaintiff, now represented by counsel, moved for an extension of time to file a response to the motion to dismiss, [D.E. 17], and a proposed order [D.E. 18]. On March 17, 2020, the court granted plaintiff an extension of time to file a response. Order [D.E. 19].

5

On April 9, 2020, summonses were returned unexecuted as to defendant Gore, indicating that the USMS was unable to serve Gore by certified mail at the address under seal. [D.E. 21]. On April 10, 2020, the court issued to plaintiff a notice of failure to make service upon defendant Gore. See [D.E. 22]. The court 1) directed plaintiff to show good cause for plaintiff's failure to accomplish service on Gore within the time prescribed by Federal Rule of Civil Procedure 4(m), and 2) warned plaintiff that failure to respond within 14 days of receipt of this notice would result in the dismissal without prejudice of Gore as a defendant. Id.

On April 15, 2020, plaintiff filed through counsel a response in opposition to Wargas's motion to dismiss, [D.E. 23], together with a memorandum in support [D.E. 24].

On April 16, 2020, plaintiff filed through counsel a response to the court's notice of failure to serve defendant Gore [D.E. 25]. Plaintiff specifically requested that defendant Gore's address be provided to the court under seal and then be provided to plaintiff's counsel to allow service of process. Id.

On April 22, 2020, defendant Wargas filed a reply [D.E. 26].

Legal Standard:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction–a court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Id. at 104; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) ("The plaintiff has the burden of proving that subject matter jurisdiction exists."). When considering a motion to dismiss for lack of subject-matter jurisdiction, "[t]he district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine

6

issue of material fact exists." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In order to withstand a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302.

When considering a motion to dismiss, the court need neither accept a complaint's legal conclusions drawn from the facts, see Iqbal, 556 U.S. at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted). The court, nevertheless, presumes as true the factual allegations in the complaint and construes these allegations in the light most favorable to the non-moving party. Albright v. Oliver, 510 U.S. 266, 268 (1994); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Although the court liberally construes *pro se* filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), all complaints still must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

Discussion:

The court notes that this order addresses only plaintiff's claims against Wargas (and Gore).

Wargas argues, in relevant part, that the amended complaint naming Wargas (and Gore) was filed well after the statute of limitations expired. Def.'s Mem. [D.E. 14] at 8. Wargas asserts that, because plaintiff did not identify Wargas (or Gore) in the initial complaint, the amended complaint may proceed against these defendants only if it "relates back" to the initial complaint. Id. at 8–9 (citing

7

Fed. R. Civ. P. 15(c)(1)(C); Goodman v. Praxair, Inc., 494 F.3d 458, 467 (4th Cir. 2007) (en banc) ("Goodman")). Wargas claims she will be prejudiced in defending the action on the merits. Id. at 10. Wargas argues that, because the initial complaint named DPS as the sole defendant and stated that other defendants were "to be determined," the extent Wargas (and Gore) are implicated at all, it is merely as "Jane Doe" defendants against whom claims do not "relate back." Id. at 10–11 (citing Locklear v. Bergman & Beving AB, 457 F.3d 363, 367 (4th Cir. 2006)).

Plaintiff, by contrast, argues that the statute of limitation issues in this case are controlled by Robinson v. Clipse, 602 F.3d 605 (4th Cir. 2010) ("Robinson"). Pl.'s Mem. [D.E. 24] at 4–7. Plaintiff contends that the 90-day period for service provided by Federal Rule of Civil Procedure Rule 4(m) was tolled until the court authorized service of Wargas on November 5, 2019. Id. at 6 (citing Robinson, 602 F.3d at 608). Plaintiff argues Wargas would not be prejudiced by defending the action on the merits because she timely was served with the amended complaint, and that, at the time Wargas received notice, "the proceedings had not advanced to the point that she could show any prejudice with regard to her presentation or preparation of her defense." Id. at 7 (citing Robinson, 602 F.3d. at 609). Plaintiff also asserts that, because "Wargas knew within the statute of limitations that she was the party [plaintiff] intended to sue . . . . [she] has been given fair notice of the original claim within the limitation period." Id. at 8 (citing Robinson, 602 F.3d. at 610).

In her reply, Wargas argues that Robinson is substantially distinguishable. See Def.'s Reply [D.E. 26] at 2. Wargas notes that, although the initial complaint in Robinson named as the sole defendant the South Carolina Department of Public Safety and Highway Patrol, defendant Clipse was identified in the complaint as the "only wrongdoer." Id. (citing Robinson, 602 F.3d. at 606). Wargas argues that she (and Gore), by contrast, were not identified as wrongdoers until the October 2019 amended complaint, a date well *after* the statute of limitations had run. Id. at 3. Wargas further argues that that, even after Robinson, district courts within the Fourth Circuit have held that substituting

8

named parties for "John Doe" defendants outside the statute of limitations is not permitted under the "relation back" doctrine. Id. at 4 (colleting cases). Wargas reiterates her claim that she will be prejudiced by having to defend the suit on the merits. Id. at 4–6.

It generally is inappropriate to raise an affirmative defense, such as a statute of limitations defense, in motion to dismiss under to Rule 12(b)(6) unless "all facts necessary to the affirmative defense clearly appear *on the face of the complaint*." Goodman, 494 F.3d at 464 (emphasis original, internal quotations and alterations omitted). Thus, if a defendant seeks to dismiss a complaint on statute of limitations grounds, the defendant must show "that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." Id. at 466.

Congress has not adopted a specific statute of limitations for section 1983 actions. Instead, the statute of limitations is determined by the law of the state in which the action arose. See Wallace v. Kato, 549 U.S. 384, 387 (2007) (citations omitted); Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014). Section 1983 actions, because they "are best characterized as personal injury actions," are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 280 (1985). Thus, North Carolina's three-year statute of limitations for personal injury actions governs this claim. See N.C. Gen. Stat.§ 1-52(5); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996); Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161–62 & n. 2 (4th Cir. 1991); Owens, 767 F.3d at 388.

A section 1983 claim generally accrues on the date when the plaintiff knows or has reason to know of the injury which is the basis of the action. See Wallace, 549 U.S. at 391. Here, the parties agree that plaintiff's claim as to Wargus (and Gore) accrued not later than April 28, 2016, and that plaintiff filed his initial complaint only a few days prior to the expiration of the three-year statute of limitations. See Def.'s Mem. [D.E. 14] at 8; Pl.'s Mem. [D.E. 24] at 4–5. Plaintiff does not plausibly allege that the actions of Wargas (or Gore) satisfy the "continuing violation" doctrine. See Williams

9

v. Blue Cross Blue Shield of N.C., 357 N.C. 170, 179 (2003) (noting that "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation," and that the doctrine applies when "the purported violation is the result of continual unlawful acts, each of which restarts the running of the statute of limitations.").

If an amended complaint is filed after the expiration of the statute of limitations, "'unless the amended complaint . . . relates back to the date of the original filing, it will be barred by the statute of limitations and subject to dismissal.'" Wilkins v. Montgomery, 751 F.3d 214, 223–24 (4th Cir. 2014) (quoting Locklear, 457 F.3d at 365).

To determine if the claims as to Wargas (and Gore) in the amended complaint "relate back" to the initial complaint, the court looks to Federal Rule of Civil Procedure 15(c)(1) which provides:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and compliant, the party to be brought in by amendment:
>
>     (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and
>
>     (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1); see also Goodman, 494 F.3d at 470 (noting the "core requirements of [Rule 15(c)(1)(C)] preserve for the new party the protections of a statute of limitations. They assure that the new party had adequate notice within the limitations period and was not prejudiced by being added to the litigation.").

Here, because plaintiff's claims against Wargas (and Gore) in the amended complaint arose out of the same conduct, transaction, or occurrence that plaintiff attempted to set out in the initial

10

complaint, Compare Am. Compl. [D.E. 7] at 6–7, with Compl. [D.E. 1] at 5–8, the amended complaint plainly satisfies the Rule 15(c)(1)(B) component imbedded within Rule 15(c)(1)(C). Nevertheless, the court agrees with Wargas that plaintiff's initial complaint, at best, merely identified Wargas (and Gore) as "Jane Doe" defendants. See Compl. [D.E. 1] at 3–4 (listing DPS as a defendant and other defendants were "to be determined"); id. at 5 (alleging that, after becoming sick due to "weed eating work" at Tabor City C.I., plaintiff entered a sick call request but "it took medical some time to respond" and, when he explained his symptoms to an unnamed nurse, plaintiff "was ignored because [he] had no fever at that visit."). Thus, this case is substantially distinguishable from Robinson, 602 F.3d. at 606 (noting Clipse was identified as the wrongdoer the initial complaint before the statute of limitations of plaintiff's claims had expired).

Regarding the substitution of Jane Doe defendants, Goodman found:

[S]ubstitutions for "Doe" defendants after limitations have run would be barred by the two separately stated requirements of [Rule 15(c)(1)] that focus *on the new party*. [Rule 15(c)(1)(C)(i)] requires that the change not prejudice the party being substituted for Doe, and [Rule 15(c)(1)(C)(ii)] requires that the new party knew or should have known within the limitations period that but for a mistake, it would have been a party. Most parties substituted for "Doe" defendants would be protected against being added either because they were prejudiced or because they did not have proper notice. Moreover, while parsing among different kinds of mistakes does not typically aid application of the Rule, naming Doe defendants self-evidently is no "mistake" such that the Doe substitute has received proper notice.

The "mistake" language is textually limited to describing the notice that the new party had, requiring that the new party have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place, although it also implies that the plaintiff in fact made a mistake. . . .

At bottom, the inquiry, when determining whether an amendment relates back looks at whether the plaintiff made a mistake in failing to name a party, in naming the wrong party, or in misnaming the party in order to prosecute his claim as originally alleged, and it looks into whether the rights of the new party, grounded in the statute of limitations, will be harmed if that party is brought into the litigation. When that party has been given fair notice of a claim *within the limitations period* and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back.

11

Id. at 471 (emphasis original); see also Wilkins, 751 F.3d at 224 ("Specifically, as to Rule 15(c)(1)(C)(ii), the Supreme Court has clarified, 'The question . . . is not whether [the amending party] knew or should have known the identity of . . . the proper defendant, but whether [the potential defendant] knew or should have known that it would have been named as a defendant but for an error.'" (quoting Krupski v. Costa Crociere, 560 U.S. 538, 548 (2010))).

Goodman further admonishes:

> [w]hen a person would reasonably believe that the time for filing suit had expired, without having been given notice that it should have been named in an existing action, that person is entitled to repose. On the other hand, when a person is provided notice within the applicable limitations period that he would have been named in the timely filed action but for a mistake, the good fortune of a mistake should not save him. This is not to say that a plaintiff may name any party within the limitations period with the hope of amending later, perhaps after discovery. Rather, it is to say that the "mistake" language is not the vehicle to address those concerns. In the cases of concern, most notably the cases of "Doe" substitutions, the notice and prejudice requirements of [Rule 15(c)(1)(C)(i) and (ii)] adequately police this strategic joinder practice. . . . The mandate remains that a plaintiff has the burden of locating and suing the proper defendant within the applicable limitations period. The Federal Rules do not demand a perfect effort at the outset, but they do demand that when an amendment seeks to correct an imperfect effort by changing parties, the new party must have received adequate notice within the limitations period and suffer no prejudice in its defense.

Goodman, 494 F.3d at 472–73 (internal citations omitted).

Here, 1) the parties agree the statute of limitations as to claims against Wargus (and Gore) ran on or about April 28, 2019, 2) the initial complaint failed to satisfy notice pleading requirements as to any defendant and only named Wargus (and Gore), at best, as Jane Doe defendants, and 3) the amended complaint identifying Wargus (and Gore) was filed after the statute of limitations had run. Thus, because Wargus (and Gore) did not receive adequate notice within the limitation period, these claims do not "relate back" to the initial complaint. See id. at 470–74; Locklear, 457 F.3d at 367; see also Lee v. City of Fayetteville, No. 5:15-CV-638-FL, 2016 WL 1266597, at *8–9 (E.D.N.C. Mar. 30, 2016); Bruce v. Smith, 581 F. Supp. 902, 906 (W.D. Va. 1984) ("*The burden of finding the proper defendant is on the plaintiff.* Plaintiff cannot toll the running of statute of limitations by filing a

complaint against some fictional character . . . . Plaintiff's original complaint was filed only one day before the statute of limitations ran. '(I)t is unfortunate that the plaintiff left himself so slender a margin for error. However, that was his decision, and it was not affected by the conduct of the Defendant." (emphasis and alterations original, citations omitted)); cf. Robinson, 602 F.3d. at 610 (finding that Clipse knew he was the party Robinson intended to sue within the limitations period).

To the extent plaintiff instead seeks tolling of the statute of limitations, North Carolina law does not allow for such tolling where plaintiff names a Jane Doe defendant rather than identifying an allegedly liable individual. See Hardin v. Straub, 490 U.S. 536, 538–39 (1985) (noting claims under section 1983 rely upon applicable state-law tolling provisions); Lee, No. 5:15-CV-638-FL, 2016 WL 1266597, at *7 (E.D.N.C. Mar. 30, 2016) (citing the following statutory and caselaw provisions: N.C. Gen. Stat. § 1–166 (allowing plaintiff to file suit against a fictitious defendant "[w]hen the plaintiff is ignorant of the name of a defendant"); Huggard v. Wake Cty. Hosp. Sys., 102 N.C. App. 772, 775 (1991) (noting N.C. Gen. Stat. § 1–166 "does not by its terms contain a tolling provision. . . . While our legislature has the power to explicitly provide for such a tolling under the 'John Doe' statute, it has not done so"); Denny v. Hinton, 110 F.R.D. 434, 436–37 (M.D.N.C. 1986) (finding there is "[n]o historical support . . . for the view that fictitious name pleading statutes, such as [N.C. Gen. Stat. § 1–166], had a purpose of extending the time within which to bring actions," and concluding the North Carolina legislature had not intended to use N.C. Gen. Stat. § 1–166 for such a purpose); Burcl v. N.C. Baptist Hosp., Inc., 306 N.C. 214, 225 n.7 (1982) (noting that a complaint cannot be filed against a John Doe defendant "in the hope that at a later time the attorney filing the action may substitute the real name [of the John Doe] . . . and have the benefit of suspension of the limitation period.")).

Additionally, because plaintiff does not plausibly allege that defendants misled him about the identity of Wargas (or Gore), equitable tolling in this matter also is unavailable under North Carolina law. See id. (noting "equitable tolling precludes a statute of limitations defense 'when a party has been

13

induced by another's acts to believe that certain facts exist, and that party rightfully relies and acts upon that belief to his detriment.'" (quoting Jordan v. Crew, 125 N.C. App. 712, 720 (1997) (internal quotation marks omitted)); Bruce, 581 F. Supp. at 906 (noting tolling is unavailable "when plaintiff's failure to discover the proper defendant is plaintiff's own doing and is not caused by any misconduct of the defendant. There is no allegation that the defendants in any way misled the plaintiff, or attempted to conceal their identity"); see also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

To the extent plaintiff instead seeks to rely on Federal Rule of Civil Procedure 15(c)(1)(A), this also fails. See Lee, No. 5:15-CV-638-FL, 2016 WL 1266597, at *9 (E.D.N.C. Mar. 30, 2016) (finding neither tolling of the statute of limitations nor equitable tolling were available under North Carolina law for John Doe complaints, and collecting cases finding that North Carolina Rule of Civil Procedure 15(c): bars the addition of new parties; merely allows "misnomer" correction; and does not allow the substitution of a named party for a John Doe defendant to "relate back").

The court concludes that Wargus has pleaded and proved both that the statute of limitations as to plaintiff's claims against Wargus (and Gore) ran before the amended complaint was filed and that plaintiff's amended complaint does not "relate back" in this case. Wargas also has shown that "plaintiff's potential rejoinder" to this statute of limitations defense is foreclosed. See Goodman, 494 F.3d at 466. This is one of those "rare circumstances" where, because "facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Id. at 464. Because plaintiff's claims against Wargus (and Gore) are time-barred, dismissal is appropriate. See Brooks, 85 F.3d at 181. Accordingly, this court need not address Wargas's alternative arguments in support of dismissal.

14

Conclusion:

In sum, the court: GRANTS the motion to dismiss [D.E. 13] under Fed. R. Civ. P. 12(b)(6); DISMISSES the claims against Wargus as time-barred; and, pursuant to 28 U.S.C. § 1915A, *sua sponte* DISMISSES the claims against Gore as time-barred. Finally, because Wargas and Gore are the sole remaining defendants in the action, the court DIRECTS the clerk to close the case.

SO ORDERED, this 21st day of September 2020.

*Richard E Myers II*
RICHARD E. MYERS II
United States District Judge